IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SPECIALTY FINANCE GROUP LLC<br><br>Plaintiff,<br><br>v.<br><br>EP MILWAUKEE, LLC;<br>DOC MILWAUKEE II, LLC;<br>SJ PROPERTIES SUITES, BUYCO,<br>EHF; PHILLIP E. HUGH;<br>JOHN W. ECONOMOU; and<br>STEVE J. ECONOMOU;<br><br>Defendants. | CASE NO. _____<br><br>1:10-CV-1020 |

## COMPLAINT

COMES NOW the Plaintiff, Specialty Finance Group LLC ("SFG"), and hereby sets forth its Complaint as follows:

### A. PARTIES

1.

SFG is a Georgia limited liability company headquartered in Atlanta, Georgia. SFG's sole member is Silverton Bank, NA, a national banking association whose principal place of business is located in Georgia.

2.

The defendant EP Milwaukee, LLC ("EP Milwaukee") is a limited liability company organized and existing under the laws of the State of Illinois with its principal place of business in Park Ridge, Illinois. EP Milwaukee's registered agent for service of process is John R. Wieser, 1030 West Higgins Road, Suite 305, Park Ridge, Illinois 60068. EP Milwaukee's members are John W. Economou, Steve J. Economou, and Thomas V. Economou, all of whom are citizens of the State of Illinois.

3.

The defendant DOC Milwaukee II, LLC ("DOC Milwaukee II") is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Fort Myers, Florida. DOC Milwaukee II's registered agent for service of process is the Corporation Trust Co., 1209 Orange Street, Wilmington, Delaware 19801. The members of DOC Milwaukee II are the defendants EP Milwaukee (whose citizenship is described above) and the non-party Development Opportunity Corporation ("DOC").

4.

Non-party DOC is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Florida.

5.

The defendant SJ Properties Suites, Buyco, ehf ("Buyco") is a private limited company organized and existing under the laws of Iceland with its principal place of business at Kringlunni 5, 103 Reykjavík, Iceland. Buyco maintains no offices in the United States and is a citizen of Iceland. Buyco is wholly owned by SJ-Fasteignir, ehf ("Fasteignir"). Fasteigner is a private limited company organized and existing under the laws of Iceland with its principal place of business in Reykjavík, Iceland. Fasteignir is a wholly owned subsidiary of Sjóvá-Almennar Tryggingar, hf ("Sjóvá"), which is incorporated under the laws of Iceland with its principal place of business in Reykjavík, Iceland.

6.

The defendant Phillip E. Hugh ("Hugh") is an individual citizen of the State of Florida and is domiciled in the State of Florida.

7.

The defendant John W. Economou ("John Economou") is an individual citizen of the State of Illinois and is domiciled in the State of Illinois.

8.

The defendant Steve J. Economou ("Steve Economou") is an individual citizen of the State of Illinois and is domiciled in the State of Illinois.

9.

The defendants EP Milwaukee, DOC Milwaukee II and Buyco are past and/or present general partners of the non-party DOC Milwaukee, LP ("the Partnership"). Non-party DOC is a limited partner of the Partnership. The Partnership is a limited partnership organized and existing under the laws of the State of Delaware.

10.

By order entered July 8, 2008, in that certain case known as *SJ Properties Suites, Buyco, ehf v. DOC Milwaukee, LP*, Circuit Court of Milwaukee County, Wisconsin, Case No. 09CV009785, the Partnership was placed into receivership.

## B. JURISDICTION AND VENUE

11.

This is an action to recover against the general partners of the Partnership on a promissory note made and delivered by the Partnership and against the guarantors of payment of such promissory note. The outstanding principal balance of the promissory note, exclusive of interest and costs, is $13,401,286.37.

12.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because SFG's citizenship is diverse from that of all Defendants and the amount in controversy exceeds $75,000 exclusive of interest and costs.

13.

Defendants are subject to the jurisdiction of this court by consent and under the Georgia long arm statute. *See* Off. Code Ga. Ann. § 9-10-91, *et seq.*

14.

Jurisdiction is appropriate under Georgia's long arm statute because, (a) the loan at issue in this case was obtained from SFG, a Georgia resident; (b) the loan was underwritten by SFG in Georgia; (c) the borrower and guarantors delivered the original signed Loan Documents (as hereafter defined) to SFG in Georgia; (d) Defendants' funding requests were sent to SFG in Georgia; (e) SFG's funding disbursements were made from Georgia; (f) loan payments were to be made to SFG in Georgia; and (g) all of SFG's loan servicing and administrative decisions were made in Georgia.

15.

Additionally, the Loan Documents contain provisions consenting to jurisdiction and venue in this Court. Specifically, Section 8.18 of the Loan Agreement (as hereafter defined) stated as follows:

> 8.18 <u>Consent to Jurisdiction</u>. BORROWER AGREES THAT ANY SUIT FOR THE ENFORCEMENT OF THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS MAY BE BROUGHT IN THE COURTS OF THE STATE OF GEORGIA OR ANY FEDERAL COURT SITTING THEREIN AND CONSENTS TO THE NONEXCLUSIVE JURISDICTION OF SUCH COURT AND THE SERVICE OF PROCESS IN ANY SUCH SUIT BEING MADE UPON BORROWER BY MAIL AT THE ADDRESS SPECIFIED IN ITEM 8.11. BORROWER HEREBY WAIVES ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE VENUE OF ANY SUCH SUIT OR ANY SUCH COURT OR THAT SUCH SUIT IS BROUGHT IN AN INCONVENIENT COURT.

(Emphasis in original).

Similarly, Section 23 of the Guaranty (as hereafter defined) states as follows:

> 23. Consent of Jurisdiction. THE GUARANTORS AGREE THAT ANY SUIT FOR THE ENFORCEMENT OF THIS GUARANTY OR ANY OF THE OTHER LOAN DOCUMENTS MAY BE BROUGHT IN THE COURTS OF THE STATE OF GEORGIA OR ANY FEDERAL COURT SITTING THEREIN AND CONSENT TO THE NONEXCLUSIVE JURISDICTION OF SUCH COURT. THE GUARANTORS HEREBY WAIVE ANY OBJECTION THEY MAY NOW OR HEREAFTER HAVE TO THE VENUE OF ANY SUCH SUIT OR ANY SUCH COURT OR THAT SUCH SUIT IS BROUGHT IN AN INCONVENIENT COURT.

(Emphasis in original).

16.

The Loan Agreement, the Note (as hereafter defined), the Guaranty, the First Forbearance Agreement (as hereafter defined) and the Second Forbearance Agreement (as hereafter defined) all incorporate Georgia law.

17.

Venue is appropriate in this Court under 28 U.S.C. § 1391(a). Moreover, Defendants consented to venue in this District in the Loan Agreement and in the Guaranty.

## C. FACTUAL BACKGROUND

### 1. The Partnership's Background

18.

The Partnership was originally formed on May 15, 2006, as a limited liability company (the "LLC") under the laws of the State of Delaware.

19.

The sole purpose of the LLC was to acquire land at the corner of Water Street and Juneau Street in downtown Milwaukee, Wisconsin (the "Property") and develop commercial retail space thereon, a 120-room extended stay hotel and a minimum of eighteen (18) luxury condominiums (the "Project").

20.

On November 6, 2006, the LLC filed a certificate with the Secretary of State of Delaware electing to convert the LLC into a limited partnership.

21.

On November 9, 2006, Buyco, EP Milwaukee, DOC Milwaukee II, and DOC entered into a partnership agreement, formally establishing the Partnership.

22.

Like the LLC, the purpose of the Partnership was to develop the Project.

23.

As of November 9, 2006, the Partnership was the owner of the Property and the Project.

24.

The Partnership's original general partner was DOC Milwaukee II.

2.  **SFG's Loan to DOC Milwaukee**

25.

On or about January 9, 2008, SFG and the Partnership entered into a Loan Agreement (the "Loan Agreement"). The purpose of the loan described in the Loan Agreement (the "Loan") was to provide financing for the Project. A true and

correct copy of the Loan Agreement is attached hereto as Exhibit "A" and incorporated herein by reference.

26.

Pursuant to the Loan Agreement, the Partnership made and delivered to the order of SFG a Promissory Note (the "Note") of even date therewith in the original principal amount of $14,900,000.00. A true and correct copy of the Note is attached hereto as Exhibit "B" and incorporated herein by reference.

27.

DOC Milwaukee II executed the Loan Agreement and the Note in its capacity as general partner of the Partnership.

28.

Also of even date therewith, Hugh, John Economou, and Steve Economou (collectively, the "Guarantors") executed and delivered to SFG a Guaranty Agreement (the "Guaranty" and collectively with the Loan Agreement and the Note, the "Loan Documents"). A true and correct copy of the Guaranty is attached hereto as Exhibit "C" and incorporated herein by reference.

29.

Under the terms of the Guaranty, the Guarantors "jointly, severally, unconditionally, and absolutely guarantee to SFG the full and prompt payment to

SFG of the Note when due, whether by acceleration or otherwise, with such interest as may accrue thereon."

### 3. The First Forbearance Agreement

30.

On or about October 8, 2008, SFG and the Partnership entered into the Forbearance Agreement (the "First Forbearance Agreement"). The First Forbearance Agreement was signed by DOC Milwaukee II in its capacity as general partner of the Partnership. A true and correct copy of the First Forbearance Agreement is attached hereto as Exhibit "D" and incorporated herein by reference.

31.

The First Forbearance Agreement included the following provisions:

(a) The Partnership confirmed that it was indebted to SFG on the Note and Loan Agreement in the amount of $7,645,444.38;

(b) The Partnership acknowledged that it had defaulted on its obligations under the Loan Agreement;

(c) The "Budget Shortfall" was quantified at $3,151,943;

(d) The Partnership agreed to fund the "Budget Shortfall," i.e. the $3,151,943, by December 1, 2008; and

(e) The Partnership released SFG from any and all claims or demands of any kind.

### 4. **EP Milwaukee Becomes the General Partner**

32.

On or about December 16, 2008, DOC Milwaukee II resigned as the general partner of the Partnership and EP Milwaukee assumed the role of general partner.

33.

By the spring of 2009, work on the Project had effectively ceased.

34.

On or about March 2, 2009, SFG provided written notice to the Partnership that it was in default of the terms of the Loan Agreement, the First Forbearance Agreement, and other documents associated with the Loan.

### 5. **The Second Forbearance Agreement**

35.

The Partnership failed to comply with the First Forbearance Agreement and the Loan Documents and on or about April 3, 2009, SFG and the Partnership entered into the Second Forbearance Agreement (the "Second Forbearance Agreement"). The Second Forbearance Agreement was signed by EP Milwaukee in its capacity as the new general partner of the Partnership. A true and correct

copy of the Second Forbearance Agreement is attached hereto as Exhibit "E" and incorporated herein by reference.

36.

The Second Forbearance Agreement confirmed the outstanding balance of the Note at $13,431,373.42, acknowledged that the Partnership was in default under the terms of the Loan Agreement and the First Forbearance Agreement, acknowledged that SFG had no further obligation to disburse any loan proceeds, and released SFG from any and all claims or demands. The Partnership further agreed to provide weekly reports on its ability and plans to cure the defaults, including the quantification of the amounts necessary to complete the Project and the source of any such funds. In consideration of the foregoing, SFG agreed not to exercise its rights and remedies until May 1, 2009.

6. **Buyco Becomes a General Partner**

37.

Following SFG's default notice, Buyco declared that it was the owner of more than 71 percent of the equity interests in the Partnership and had removed EP Milwaukee as general partner of the Partnership and had elected or appointed itself as general partner.

38.

Buyco assumed the role of general partner of the Partnership no later than April 29, 2009.

39.

The Partnership failed to comply with the Second Forbearance Agreement and the Loan Documents.

7. **Continued Default and Acceleration**

40.

The defaults were not cured, and by letter dated July 13, 2009 (the "Acceleration Letter"), SFG gave notice that the maturity of the Note had been accelerated. The Acceleration Letter demanded full and immediate payment of the entire outstanding balance of the Note. A true and correct copy of the Acceleration Letter is attached hereto as Exhibit "F" and incorporated herein by reference.

41.

As of March 31, 2010, the total outstanding balance of the Note is $13,401,286.37, principal; $891,368.88, interest; and $15,016.56 in other charges. Interest continues to accrue at the rate of $1,861.29 per day.

42.

Defendants are hereby notified that, if the Note is collected by or through an attorney at law, the Partnership (and, therefore, its general partners) and the Guarantors are liable for the payment of SFG's reasonable attorneys' fees, in addition to all other amounts owed. Defendants are hereby further notified that SFG intends to enforce the provisions of the Note and Guarantors requiring the payment of attorneys' fees. Therefore, in accordance with Section 13-1-11 of the Official Code of Georgia Annotated, Defendants are hereby notified that if they pay the full amount of outstanding principal and interest within ten (10) days of service of this Complaint, the provisions of the Note and Guaranty regarding attorneys' fees cannot be enforced. If such principal and interest is not paid within such ten-day period, the provisions of the Note and Guaranty regarding attorneys' fees will be enforced.

43.

In accordance with Section 13-1-11 of the Official Code of Georgia Annotated, such attorneys' fees shall be equal to 15 percent of the first $500 of principal and interest owed and 10 percent of the remaining principal and interest owed.

## COUNT ONE
## SUIT AGAINST GENERAL PARTNERS

44.

Paragraphs 1 through 43 are hereby realleged in their entirety and incorporated herein by reference.

45.

The Partnership is in default of numerous obligations under the Loan Agreement, the Note, the First Forbearance Agreement, and the Second Forbearance Agreement.

46.

As stated above, the maturity of the indebtedness evidenced by the Note has been accelerated and the entire outstanding balance of the Note is due and payable.

47.

As general partners of the Partnership, DOC Milwaukee II, EP Milwaukee, and Buyco are liable for the obligations of the Partnership under the Loan Documents.

## COUNT TWO
## BREACH OF THE GUARANTY

48.

Paragraphs 1 through 47 are hereby realleged in their entirety and incorporated herein by reference.

49.

Under the terms of the Guaranty, the Guarantors "jointly, severally, unconditionally, and absolutely guarantee to SFG the full and prompt payment to SFG of the Note when due, whether by acceleration or otherwise, with such interest as may accrue thereon."

50.

In the Acceleration Letter, SFG notified the Guarantors that the maturity of the indebtedness evidenced by the Note had been accelerated and demanded immediate payment of the entire indebtedness in full.

51.

As per Paragraph 41 of this Complaint, the Guarantors have been notified of SFG's intention to collect attorneys' fees and of the Guarantors' opportunity to avoid liability for attorneys' fees by paying the full amount of principal and interest owed under the Guaranty within ten (10) days of service of this Complaint.

## COUNT THREE
## EXPENSES OF LITIGATION

52.

Paragraphs 1 through 51 are hereby realleged in their entirety and incorporated herein by reference.

53.

Defendants have acted in bad faith, have been stubbornly litigious, and have caused SFG unnecessary trouble and expense.

54.

As a result, Defendants are liable to SFG under Section 13-6-11 of the Official Code of Georgia Annotated for the reasonable expenses of this litigation, including attorneys' fees, to the extent such fees exceed those awarded under Section 13-1-11 of the Official Code of Georgia Annotated.

WHEREFORE, SFG prays as follows:

(a) That judgment be entered in favor of SFG and against Defendants, in the amount of $13,401,286.37, principal; $891,368.88, interest (plus additional interest after March 31, 2010, accruing at the rate of $1,861.29 per day); and $15,016.56 in other charges;

(b) That, if Defendants fail to pay the full amount of principal and interest owed within ten days of the receipt of the Complaint, judgment be entered for

attorneys' fees equal to 15 percent of the first $500 in principal and interest owed and 10 percent of the remaining principal and interest owed;

(c) That judgment be entered against Defendants for the reasonable expenses of this litigation, including attorneys' fees, to the extent such fees exceed those awarded under Paragraph (b), above;

(d) That all costs of this action be cast against Defendants; and

(e) That this Court enter such other and further relief as it shall deem just and proper.

This 7th day of April, 2010.

MORRIS, MANNING & MARTIN, LLP

_____
Lewis E. Hassett
Georgia Bar No. 336140
J. Ben Vitale
Georgia Bar No. 108106

Attorneys for Plaintiff Specialty
Finance Group LLC

1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, GA 30326
Telephone: (404) 233-7000
Facsimile: (404) 365-9532